UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN G.C.,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01648-KES-HBK (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 2 |

This habeas action concerns the re-detention of petitioner Carmen G.C., a noncitizen who was detained and released in 2022 but was recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 2. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

preliminary injunction, is granted.

## I.     Background

Petitioner is a 27-year-old asylum-seeker from Guatemala who entered the United States without inspection on June 25, 2022. Doc. 1 at ¶ 22; Doc. 8-1, Muñoz Decl. at ¶¶ 6–7. Three days later, she was encountered by immigration authorities who arrested and detained her. Doc. 8-1, Muñoz Decl. at ¶ 7. On August 9, 2022, immigration officials provided petitioner with a notice of custody determination which stated that she was being released "pursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226. Doc. 2-1, Ex. 1. She was also provided an interim notice authorizing parole. Doc. 2-1, Ex. 2. The regulations that authorize immigration authorities to release a noncitizen pursuant to § 1226 require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

As a condition of her release, petitioner was instructed to appear in person at the San Francisco Immigration and Customs Enforcement ("ICE") office on September 22, 2022. Doc. 1 at ¶ 23. When she did so, ICE agents instructed her to return for a second in-person visit on June 15, 2023. *Id.* Petitioner returned to the San Francisco ICE Office on June 15, 2023, as instructed. *Id.* At that appointment, ICE agents provided her with an order of supervision, which outlined additional conditions for her to follow and instructed her to return for an in person appointment on June 17, 2024. *Id.* ¶ 24; *see* Doc. 2-1, Ex. 3.² When petitioner reported to the

---

² There is a notation on the order of supervision that petitioner was ordered removed on June 25, 2022, *see* Doc. 2-1, Ex. 3, but there is no other evidence in the record that petitioner was ordered removed. That notation in the order of supervision also conflicts with the fact that petitioner was provided a notice of custody determination over a month after June 25, 2022, and that notice stated that she was being release "pending a final administrative decision in [her] case." Doc. 2-1, Ex. 1. It also conflicts with the fact that petitioner currently remains in removal proceedings. *See* Doc. 2-1, Ex. 5.

2

1    San Francisco ICE office on June 17, 2024, ICE agents informed her that she was being enrolled
2    in the Intensive Supervision Appearance Program ("ISAP"). *Id.* ¶ 25. They provided petitioner
3    with a cell phone which contained a monitoring app. *Id.* Petitioner was instructed to take
4    pictures of herself on a weekly basis to confirm her identity and location. *Id.* ICE agents also
5    instructed petitioner to report in person on June 17, 2025. *Id.* ¶¶ 24, 27. Petitioner states that she
6    missed a virtual check-in once in 2024 because her cell phone battery had died, but she uploaded
7    a picture of herself the next day after explaining what had happened to her assigned ICE agent.
8    Doc. 2-1, Hernandez Decl. at ¶ 3. Petitioner reported to the San Francisco ICE office on June 17,
9    2025, and she indicates that no agent mentioned the missed check-in to her. Doc. 1 at ¶ 27; Doc.
10   2-1, Hernandez Decl. at ¶ 3.

11        During her time in the United States, petitioner met her current partner. Doc. 1 at ¶ 33;
12   Doc. 2-1, Hernandez Decl. at ¶ 7. They now have a one-year-old daughter, and they are engaged
13   to be married. Doc. 2-1, Hernandez Decl. at ¶ 7. Petitioner worked at a restaurant to support
14   herself and her family. *Id.*

15        Petitioner was instructed to appear for a credible fear interview on October 1, 2025.
16   Doc. 1 at ¶ 29. She did so, and the asylum officer found that she had a credible fear of returning
17   to Guatemala. *Id.* The next day, petitioner was served with a notice to appear for removal
18   proceedings. *Id.* ¶¶ 29–30. She then hired an immigration attorney and began preparing her
19   asylum application. *Id.* ¶ 31.

20        Respondents assert that petitioner violated the terms of her release on October 15, 2025
21   and November 15, 2025 because she missed two virtual check-ins and her tracking device did not
22   report. Doc. 8-1, Muñoz Decl. at ¶¶ 11–13. Petitioner states that she complied with all terms of
23   her release to the best of her knowledge, except for missing one check-in in 2024, as noted above.
24   Doc. 1 at ¶ 32; Doc. 2-1, Hernandez Decl. at ¶ 6. On November 16, 2025, ICE agents arrested
25   petitioner after asking her to step outside her home. Doc. 1 at ¶ 34; Doc. 2-1, Hernandez Decl. at
26   ¶ 6. She is now detained at California City Detention Center. Doc. 8-1, Muñoz Decl. at ¶ 15.

27        On November 25, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a
28   motion for temporary restraining order, Doc. 2, arguing that her re-detention without a pre-

1 deprivation bond hearing violates the Due Process Clause of the Fifth Amendment. Respondents

2 filed an opposition on December 5, 2025. Doc. 8. Petitioner filed a reply the same day. Doc. 9.

3 **II. Conversion to a Motion for Preliminary Injunction**

4 When the Court set a briefing schedule on the motion, it ordered the parties to state their

5 position on whether the motion for temporary restraining order should be converted to a motion

6 for preliminary injunction and whether the parties requested a hearing on the motion. Doc. 5.

7 Neither party objected to converting the motion or requested a hearing. *See* Docs. 8, 9. Given

8 that the standard for issuing a temporary restraining order and preliminary injunction is the same,

9 *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and

10 respondents had notice and opportunity to respond in opposition, *see* Doc. 8, petitioner's motion

11 is converted to a motion for preliminary injunction.

12 **III. Legal Standard**

13 "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

14 *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

15 90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to

16 succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

17 relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

18 *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

19 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of

20 success on the merits is a threshold inquiry and is the most important factor." *Simon v. City &*

21 *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

22 *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious

23 questions going to the merits—a lesser showing than likelihood of success on the merits—then a

24 preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

25 favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767

26 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

27 ///

28 ///

4

### IV. Discussion

#### a. Likelihood of Success on the Merits

Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, see *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 2 at 6–11. In response, respondents argue that petitioner has no procedural due process rights because she is subject to the "entry fiction" doctrine. Doc. 8 at 19–20.

This doctrine arises from the distinction made by our immigration laws "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the [Supreme] Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). For those on the threshold, they have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). But "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

In some instances, however, one may be physically present in the United States but still treated as if stopped at the border. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). That is because the distinction between those outside and inside the country "would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil. When an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* In

5

*Thuraissigiam*, the Court held that this doctrine applies when a noncitizen manages to run 25 yards past the border before being apprehended by immigration officials; the noncitizen there could not be considered to have "effected an entry." *See id.* at 114, 140.

The cases cited by respondents, with one exception, hold that the entry fiction doctrine addresses due process rights regarding *admission* into the country—not detention.[3] *Id.* at 140 ("[A]n alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute."); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission

---

[3] Respondents identify one case which extended the applicability of the "entry fiction" doctrine to a challenge to immigration detention: *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995). In *Barrera-Echavarria*, the petitioner was a noncitizen who was detained at a port of entry and ordered excluded, was paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A), and was then subsequently re-detained. *Id.* at 1143–44. The Ninth Circuit held that the petitioner was subject to the entry fiction doctrine, even though he had been paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) for a period of time. *Id.* at 1450 (citing *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993)). And "[b]ecause excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Id.* The Ninth Circuit upheld the petitioner's detention and rejected his claim that "his detention in federal prisons almost continuously since 1985 falls on the punishment side of the line and violates his [substantive] right to due process." *Id.* at 1448–50. The court also appeared to condition its holding on the fact that "under the Cuban Review Plan, Barrera's case continues to be reviewed at least annually to determine if he meets established criteria for granting parole." *Id.* at 1450. The Court noted that "[w]hen viewed in this light, as a series of one-year periods of detention followed by an opportunity to plead his case anew, we have no difficulty concluding that Barrera's detention is constitutional . . . ." *Id.*

*Barrera-Echavarria* does not foreclose a procedural due process challenge to re-detention pending removal proceedings, because it considered a substantive due process challenge to detention after a noncitizen had been ordered excluded. *See Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8 U.S.C. § 1225(b)). Additionally, the Ninth Circuit has counseled that any case applying the entry fiction doctrine should be read narrowly: "[T]he entry doctrine does not categorically exclude non-admitted aliens from all constitutional coverage . . . . Recognizing such a logical endpoint to the entry fiction prevents its application from becoming an exercise inconsistent with our basic constitutional values. . . . The entry fiction is best seen, instead, as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away." *Wong v. United States*, 373 F.3d at 970–75.

1  and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to
2  detention); *see also Wong v. United States*, 373 F.3d 952, 970–75 (9th Cir. 2004), *overruled on*
3  *other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007) ("The entry fiction is best seen, instead,
4  as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch
5  must follow before turning an immigrant away. Otherwise, the doctrine would allow any number
6  of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-
7  persons.").

8  Noncitizens outside the country, as well as noncitizens subject to the entry fiction
9  doctrine, do not have due process rights to challenge their denial of admission into the country.
10  As the Supreme Court explained in *Thuraissigiam*, "[t]he power to admit or exclude aliens is a
11  sovereign prerogative; the Constitution gives the political department of the government plenary
12  authority to decide which aliens to admit; and a concomitant of that power is the power to set the
13  procedures to be followed in determining whether an alien should be admitted." *Id.* (internal
14  citations and quotation marks omitted).

15  Respondents ask the Court to apply the "entry fiction" doctrine to petitioner, but the
16  important distinction between this case and those cited above is that, here, the government did not
17  treat petitioner as if she had been stopped at the border when it detained and released her after her
18  entry. "The responsibilities of officials with respect to noncitizens at the border" and other ports
19  of entry "are set out in 8 U.S.C. § 1225." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th
20  1102, 1118 (9th Cir. 2025). When immigration authorities detained petitioner, they did not treat
21  her as subject to 8 U.S.C. § 1225. Instead, they provided her with a notice of custody
22  determination which stated that she was being released "pursuant to the authority contained in
23  section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226.
24  Doc. 2-1, Ex. 1.[4]  Section 1226(a) is the discretionary detention authority for "aliens already

---

[4] Although petitioner was also provided with an interim notice authorizing parole, that document states that parole was set to expire a year later. Doc. 2-1, Ex. 2. Petitioner was not re-detained when that parole expired, which suggests that her release continued to be authorized by 8 U.S.C. § 1226.

7

present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see Cardenas v. Alomar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (noting the "scores of decisions" that have reached this conclusion). It is significant that immigration officials invoked this statute when detaining and releasing petitioner because, under 8 U.S.C. § 1226(a), petitioner has the right to a bond hearing before an immigration judge, *see* 8 C.F.R. § 1236.1(d)(1), and she must be released on bond if she can "establish to the satisfaction of the Immigration Judge . . . that [] she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (quoting *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).[5]

Here, the government itself treated petitioner as a person who had entered and was already present in the country when they detained and released her. This fact undermines respondents' attempt to apply the entry fiction doctrine. The government's actions in releasing petitioner subject to § 1226(a) are inconsistent with their claim that petitioner is subject to the entry fiction doctrine. While "the line between when a person is 'seeking admission' as opposed to being 'already in the country' is not necessarily obvious" in all cases, *see Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *5 (N.D. Ill. Oct. 21, 2025), here immigration officials implicitly determined that petitioner was "already present in the country" when they released her pursuant to 8 U.S.C. § 1226(a). Respondents' new argument that the entry fiction doctrine applies is contradicted by the government's prior conduct.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

---

[5] In contrast, those subject to 8 U.S.C. § 1225(b)(2) have no statutory right to a bond hearing. *See Jennings*, 583 U.S. 281, 283 (noting that the parole provision is a limited "exception [which] implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

**1. Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84. Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed her to live in the community and provide for her family.

Respondents argue that petitioner is subject to 8 U.S.C. § 1225(b)(2)(A) and that petitioner's detention is therefore mandatory. The argument that § 1225(b)(2) applies to someone in petitioner's circumstances is incorrect for the reasons set forth in *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8 (E.D. Cal. Nov. 12, 2025).

Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to petitioner in the notice of custody determination that she was being released "[p]ursuant to the authority contained in section 236" of the INA, which is codified at 8 U.S.C. § 1226. Doc. 2-1, Ex. 1. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that she would be entitled to retain she liberty so long as she was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at \*4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to her that her release was pursuant to section 1226, combined with the three years she spent at liberty while relying on that representation.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at \*4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at \*3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

10

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[6]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over three years in reliance on the government's previous representations that she was being released pursuant to § 1226(a) pending her removal proceedings. Her detention denies her that freedom.[7]

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;

---

[6] Respondents note that the Supreme Court has never utilized the *Mathews* factors in evaluating a Due Process claim by a noncitizen, Doc. 8 at 22–23 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)), but respondents analyze the *Mathews* factors without proposing an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). The Court does not see a reason to depart from this practice. As the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz*, 53 F.4th at 1206–07.

[7] Respondents, citing *Zadvydas* and several other prolonged detention cases, argue that petitioner's interest is low because she has not been detained for a long period of time. Doc. 8 at 23. However, this case is not about prolonged detention; it is about petitioner's re-detention without a bond hearing given the liberty interest that arose when immigration authorities released petitioner for several years.

1  *Padilla*, 704 F. Supp. 3d at 1172.  Respondents appear to concede that petitioner is not a danger

2  or a flight risk.  Doc. 8 at 24 ("Even if Petitioner specifically does not appear to be a danger or

3  flight risk, the Government has a strong interest in effectuating the system Congress devised."

4  (internal quotation marks omitted)).  Given these circumstances, the risk of erroneous deprivation

5  is significant.[8]

6       Third, although the government has a strong interest in enforcing the immigration laws,

7  the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,

8  415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95

9  (E.D. Cal. 2025).  In immigration court, custody hearings are routine and impose a "minimal"

10  cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any

11  point, it has the power to take steps toward doing so; but its interest in doing so without a hearing

12  is low."  *Ortega*, 415 F. Supp. 3d at 970.

13       On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where

14  the government must prove that she is a flight risk or danger to the community by clear and

15  convincing evidence.  That hearing should have occurred before petitioner was re-detained.

16  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an

17  opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Cleveland*

18  *Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S.

19  371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually

20  has held that the Constitution requires some kind of a hearing *before* the State deprives a person

21  of liberty . . . .").  Courts typically require evidence of urgent concerns or an especially strong

22  government interest to justify a post-deprivation hearing.  *See Guillermo M. R.*, 2025 WL

23  1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993)

---

[8] Respondents assert that petitioner violated the terms of the ISAP program on four occasions and that they had the authority to re-detain her pursuant to 8 C.F.R. § 241.4(l)(2).  Doc. 8 at 20–22.  8 C.F.R. § 241.4(l)(2) authorizes immigration officials to "revoke release and return to Service custody an alien previously approved for release under the procedures in this section."  8 C.F.R. § 241.4(l)(2).  That section deals only with the release and re-detention of noncitizens who have been ordered removed and are beyond the removal period.  *See generally* 8 C.F.R. § 241.4.  Petitioner was not ordered removed, so that regulation does not apply here.

("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). Respondents concede in their opposition that petitioner "does not appear to be a danger or flight risk . . . ." Doc. 8 at 24. Thus, petitioner is entitled to a pre-deprivation hearing.

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Irreparable Harm

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner *without a bond hearing*. Faced with a choice "between [this minimally costly procedure] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).[9]

---

[9] While respondents argue that they have a strong interest in "protecting the public and preventing deportable aliens from fleeing[,]" Doc. 8 at 25, as noted above they concede that petitioner is not a danger or a flight risk, Doc. 8 at 24.

1    The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

## V.   Conclusion and Order

Accordingly:

1. Petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED.
2. Respondents are ORDERED to release petitioner immediately.
3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

14

5.  Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:   December 8, 2025

_____
UNITED STATES DISTRICT JUDGE